UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLARENCE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-CV-1231-NCC |
| ) | |
| CHARLES MORGAN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on review of plaintiff Clarence Taylor's civil complaint pursuant to 28 U.S.C. § 1915A. For the reasons discussed below, the Court will dismiss plaintiff's official capacity claims. However, the Court has determined that the individual capacity claims against defendants Charles Morgan, Danail Taylor, Rachel Price, and Unknown Mezzo are sufficient for purposes of 28 U.S.C. § 1915A review. Plaintiff will be required to effect service on these defendants in their individual capacities within ninety days of the date of this order.

**Motion for Leave to Proceed in Forma Pauperis**

Plaintiff has filed a motion for leave to proceed in forma pauperis, along with a copy of his certified inmate account statement. (Docket No. 3; Docket No. 4). Shortly after moving for leave to proceed in forma pauperis, however, plaintiff paid the full amount of the filing fee. Therefore, the motion will be denied as moot.

Because plaintiff's complaint is fully paid, the Court cannot review it pursuant to 28 U.S.C. § 1915, which governs in forma pauperis proceedings. Nevertheless, as discussed below, plaintiff's action is still subject to the screening mechanisms of 28 U.S.C. § 1915A.

**Legal Standard on 28 U.S.C. § 1915A Review**

Under 28 U.S.C. § 1915A, the Court is required to review a civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915(A)(a). The term "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." 28 U.S.C. § 1915A(c). Pursuant to this section, the Court must dismiss a complaint if it "is frivolous, malicious, or fails to state a claim upon which relief can be granted," or if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(A)(b). Here, plaintiff is a convicted and sentenced state prisoner who is suing employees of a governmental entity. (Docket No. 1 at 2-4). As such, his complaint is subject to screening under 28 U.S.C. § 1915A.

To state a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a complaint filed by a self-represented litigant, the Court must give it the benefit of a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. He brings this action pursuant to 42 U.S.C. § 1983, alleging that prison employees failed to protect him from being physically and sexually assaulted by his cellmate.

The complaint names Correctional Officer Charles Morgan, Correctional Officer Danail Taylor, Case Manager Rachel Price, and Correctional Officer Unknown Mezzo as defendants. (Docket No. 1 at 2-4). All are alleged to be employees of the Missouri Department of Corrections. They are sued in both their official and individual capacities.

In the "Statement of Claim," plaintiff asserts that on April 3, 2020, at 8:30 p.m., he was escorted from his cell to the showers. (Docket No. 1 at 6). While he was in the shower, his cellmate

– Inmate Thomas – had a "mental breakdown" in their cell. Specifically, Inmate Thomas "held the food port hostage by refusing to remove his arm." Inmate Thomas also told Officers Mezzo, Taylor, and Morgan "that the voices were telling [Thomas] to harm his cellmate."

When plaintiff returned to his cell, Inmate Thomas told Officer Mezzo that "I already told [you all] what's up!" At that point, Inmate Thomas "submitted to wrist restraints and allowed [plaintiff] to enter."

After plaintiff's own wrist restraints were removed, Inmate Thomas purportedly told Officer Mezzo that Thomas was not going to give Mezzo "these cuffs." Furthermore, Inmate Thomas allegedly declared to the officers that he was taking plaintiff "hostage."

As this situation unfolded, Officer Taylor advised plaintiff that he had "better handle [his] business," to which plaintiff responded that he "did not have [anything] to do with this situation and that [he] did not want to be pepper sprayed." Officer Morgan then "approached the cell and stated, 'You better kick [Inmate Thomas's] a\*\* or I'm spraying the whole cell.'"

In order to defuse the situation – and not "knowing that [Inmate] Thomas was a homosexual" – plaintiff offered to give Inmate Thomas "oral sex" if Thomas either allowed the correctional officers to "have [Thomas's] wrist restraints or allowed [plaintiff] to submit to wrist restraints." (Docket No. 1 at 6-7). At that point, Inmate Thomas gave up the wrist restraints he had taken. (Docket No. 1 at 7).

According to plaintiff, Officer Taylor, Officer Morgan, and Officer Mezzo "then walked away," leaving him in the cell with Inmate Thomas. Inmate Thomas "expected [plaintiff] to perform oral sex on him," but plaintiff tried to refuse. Plaintiff alleges that Inmate Thomas insisted, telling him that: "It's what Diablo wants."

4

In response, plaintiff "pressed the duress button" to summon help. No one came to "rescue" him, and he and Inmate Thomas began to fight. Plaintiff lost this fight, with the result that he gave Inmate Thomas oral sex. Following this incident, Inmate Thomas requested protective custody status.

The following day, on April 4, 2020, Case Manager Price "was passing legal documents." Plaintiff "informed her what happened and asked her 'how did a mental health level 4 offender get in the cell with [him]?'" According to plaintiff, Case Manager Price responded that she thought plaintiff was "gay like him." She next made a crude remark about plaintiff performing oral sex, then walked away laughing. Plaintiff alleges that Case Manager Price was a "bed broker" and purposefully placed Inmate Thomas in a cell with him. He further notes that he is a mental health level 1 offender.

As a result of this incident, plaintiff states that he was "physically and sexually assaulted," resulting in severe depression for which he is "forced to take medication." (Docket No. 1 at 8). He further asserts that he was "subjected to [H. pylori]…which will remain with [him] for the rest of [his] life."[1] Plaintiff is seeking $200,000 from each defendant in compensatory damages, and $200,000 from each defendant in punitive damages. (Docket No. 1 at 9). He also wants all defendants fired.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983. Because he is a convicted and sentenced state prisoner who is suing governmental employees, the Court has reviewed his complaint under 28 U.S.C. § 1915A. Based on that review, and for the reasons discussed below, plaintiff's official capacity claims will be dismissed without prejudice.

---

[1] H. pylori is a type of bacteria known as "Helicobacter pylori," which can infect a person's stomach. *See Davidson v. Helder*, 2019 WL 6917895, at *2 n.7 (W.D. Ark. 2019).

However, the individual capacity claims against defendants Morgan, Taylor, Price, and Mezzo are sufficient for purposes of § 1915A screening.

### A. Official Capacity Claims

Plaintiff has sued defendants Morgan, Taylor, Price, and Mezzo in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In this case, defendants Morgan, Taylor, Price, and Mezzo are all alleged to be employees of the Missouri Department of Corrections. Thus, the official capacity claims against them are actually claims against the State of Missouri itself. To the extent that plaintiff is seeking monetary damages, his claims fail for two reasons.

First, 42 U.S.C. § 1983 "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*,

6

491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (explaining that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (explaining that "a state is not a person for purposes of a claim for money damages under § 1983"). Because the state is not a "person," plaintiff is missing an essential element of a § 1983 claim. Thus, his official capacity claims must be dismissed.

Second, plaintiff's official capacity claims for money damages are barred by sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on a non-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). "A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the

7

text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception does not apply because the State of Missouri has not waived its immunity in this type of case. *See* Mo. Rev. Stat. § 537.600 (explaining that sovereign immunity is in effect, and providing exceptions). Thus, plaintiff's official capacity claims for money damages are barred by sovereign immunity.

To the extent that plaintiff is seeking injunctive relief, he has not demonstrated that the State of Missouri is liable for harming him. *See Kelly*, 813 F.3d at 1075 (noting that to prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct). Such liability may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). As such, plaintiff has three ways in which to prove the liability of the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who

has final authority regarding such matters." *See Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *See Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate

indifference, a plaintiff must prove that the governmental entity "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). At a minimum, however, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not presented any facts supporting the proposition that the State of Missouri harmed him due to an unconstitutional policy, custom, or failure to train.

With regard to policy, plaintiff has not pointed to any policy statement, statute, regulation, or official decision as even being at issue in this case, let alone causing the violation of his constitutional rights. Certainly, there is no indication that plaintiff was harmed by "a deliberate choice of a guiding principle or procedure made by" a state official. Instead, plaintiff's allegations describe the wrongful conduct of a handful of correctional officers, with no facts showing that they acted according to any policy. In addition, plaintiff's complaint describes only a single incident that took place on April 3, 2020. The Court cannot infer the existence of an unconstitutional policy or custom from a single occurrence. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991).

As to an unconstitutional custom, plaintiff has not demonstrated the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by State of Missouri

employees, much less that state officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than a pattern of unconstitutional behavior, plaintiff's "Statement of Claim" concerns a solitary incident. As noted above, the Court cannot infer the existence of an unconstitutional custom from a single occurrence.

Likewise, regarding a failure to train, plaintiff has not shown that the State of Missouri "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is typically provided by alleging a "pattern of similar constitutional violations by untrained employees." As previously noted, the Court cannot infer a pattern from a single, seemingly-isolated incident.

Finally, to the extent that plaintiff seeks to hold the State of Missouri responsible simply because it employs defendants Morgan, Taylor, Price, and Mezzo, the Court notes that the doctrine of respondeat superior is not available in 42 U.S.C. § 1983 cases. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a [governmental entity] … cannot be liable on a respondeat superior theory").

For all these reasons, plaintiff has failed to state a claim against the State of Missouri. Therefore, the official capacity claims against defendants Morgan, Taylor, Price, and Mezzo must be dismissed.

### B. Individual Capacity Claims

Plaintiff has also sued defendants Morgan, Taylor, Price, and Mezzo in their individual capacities, alleging that they failed to protect him from a physical and sexual assault by his cellmate.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a

clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). However, not every injury suffered by one prisoner due to the actions of another prisoner translates into constitutional liability. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010); *see also Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (explaining that because prisons are inherently dangerous environments, not every injury suffered by one prisoner that has been caused by another translates into constitutional liability for the prison officials responsible for the victim's safety). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove deliberate indifference, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). If a plaintiff fails to allege a substantial risk of serious harm, then he has failed to state a claim, and there is no need to consider the issue of the defendant's deliberate indifference. *See Berry v. Sherman*, 365 F.3d 631, 635 (8th Cir. 2004).

The second requirement is a subjective inquiry, and compels the inmate to prove that the prison official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. That is, a plaintiff must show that the defendant acted or failed to act with deliberate indifference to the plaintiff's safety. *Id.* at 837 (explaining that a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Negligence is insufficient to demonstrate deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Instead, for a defendant to have acted with deliberate

12

indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

In short, a prison official is deliberately indifferent if he or she "knows of and disregards … a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016).

### i.   Officers Taylor, Morgan, and Mezzo

Plaintiff has adequately alleged that Officers Taylor, Morgan, and Mezzo knew of and disregarded the substantial risk of harm to plaintiff that was posed by Inmate Thomas. He has presented facts showing that Inmate Thomas was having a mental health crisis while plaintiff was in the shower. In the presence of Officer Taylor, Officer Morgan, and Officer Mezzo, Inmate Thomas threatened to harm plaintiff. When plaintiff returned to his cell, Inmate Thomas allegedly took plaintiff "hostage." Instead of intervening, plaintiff maintains that these three defendants told him to "handle [his own] business" and to "kick [Inmate Thomas's] a**." Plaintiff states that he had to defuse the situation himself, by offering to perform oral sex on Inmate Thomas. Officers Taylor, Morgan, and Mezzo then left plaintiff in the cell with Inmate Thomas, whereupon he was physically and sexually assaulted. Despite hitting the duress button, plaintiff asserts that he received no help. The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, plaintiff's individual capacity claims against Officers Taylor, Morgan, and Mezzo are sufficient for purposes of 28 U.S.C. § 1915A review.

### ii.   Case Manager Price

Plaintiff has also adequately stated that Case Manager Price knew of and disregarded the substantial risk of harm posed by Inmate Thomas. According to plaintiff, Case Manager Price was

13

the "bed broker," responsible for plaintiff's cell assignment. Plaintiff alleges that Price purposefully and wrongfully placed him into a cell with Inmate Thomas, even though Inmate Thomas was "a mental health level 4 offender," while he was only a level 1 mental health offender. Plaintiff alleges that Case Manager Price did this apparently because she thought plaintiff was "gay like [Inmate Thomas]." When advised about what had transpired, Price allegedly made a crude joke regarding oral sex, laughed, and walked away, raising the inference that Price's housing decision was deliberately inappropriate.

The Court must accept these allegations as true and make all reasonable inferences in plaintiff's favor. *See Jones*, 915 F.3d at 499. Additionally, the Court bears in mind that when evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). As such, plaintiff's individual capacity claim against Case Manager Price is sufficient for purposes of 28 U.S.C. § 1915A review.

### C. Service of Process

As noted above, plaintiff has paid the required civil filing fee in this matter. Consequently, the Court is not responsible for service of process pursuant to 28 U.S.C. § 1915, and plaintiff must arrange for service on his own. *See* 28 U.S.C. § 1915(d) (providing that where the plaintiff is proceeding in forma pauperis, "[t]he officers of the court shall issue and serve all process"). Pursuant to the Federal Rules of Civil Procedure, plaintiff is advised that service may be effectuated by "[a]ny person who is at least 18 years old and *not a party*" to this case. *See* Fed. R. Civ. P. 4(c)(2) (emphasis added). This means that plaintiff must find a qualified person other than himself to serve process on the complaint. Ordinarily, plaintiff has ninety (90) days from the filing

of the complaint to serve process on defendants. *See* Fed. R. Civ. P. 4(m). However, in light of the fact that initial review of plaintiff's complaint has just been completed, the Court will give plaintiff ninety (90) days from the date of this order to complete process on defendants.

### D. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 2). In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim … and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson*, 902 F.3d at 850. When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

### E. Motion for Summonses

Plaintiff has submitted a letter to the Court that has been construed as a motion for summonses. (Docket No. 6). In the motion, plaintiff states that he is "paying the full amount of the filing fee" and requests "a copy of the complaint for each defendant, along with the summons[es]

15

to send with them." As discussed above, plaintiff's official capacity claims are being dismissed. However, plaintiff's individual capacity claims against defendants Charles Morgan, Danail Taylor, Rachel Price, and Unknown Mezzo are sufficient for purposes of 28 U.S.C. § 1915A review. Thus, the Clerk of Court will be directed to prepare summonses for defendants in their individual capacities, and to deliver these to plaintiff for service.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's official capacity claims against defendants Charles Morgan, Danail Taylor, Rachel Price, and Unknown Mezzo are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915A(b)(1). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 3) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 2) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion for summonses (Docket No. 6) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the complaint and summons for each defendant.

**IT IS FURTHER ORDERED** that plaintiff shall cause service to be effected upon defendants no later than **February 14, 2022**.

**IT IS FURTHER ORDERED** that in the absence of good cause shown, the failure to timely serve a defendant by **February 14, 2022** will result in the dismissal of plaintiff's claims against that defendant without prejudice.

**IT IS FURTHER ORDERED** that an appeal from this order of partial dismissal would not be taken in good faith.

Dated this <u>15th</u> day of November, 2021.

_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**