# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CLARENCE TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 4:21-CV-1231 RLW |
| CHARLES MORGAN, et al., | ) ) ) |
| Defendants. | ) ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion for leave to file a response out of time (ECF No. 28) and motion to dismiss (ECF No. 26). For the reasons discussed below, the Court will grant the motion to file a response out of time, deny the motion to dismiss, and direct defendants to file an answer within fourteen days.

## Background

Plaintiff is a self-represented litigant who is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. On October 12, 2021, he filed a civil action pursuant to 42 U.S.C. § 1983, alleging that prison employees failed to protect him from being physically and sexually assaulted by his cellmate. (ECF No. 1). The complaint named Correctional Officer Charles Morgan, Correctional Officer Danail Taylor, Case Manager Rachel Price, and Correctional Officer Unknown Mezzo as defendants. (ECF No. 1 at 2-4). All were alleged to be employees of the Missouri Department of Corrections, and were sued in both their official and individual capacities.

In the "Statement of Claim," plaintiff asserted that on April 3, 2020, at 8:30 p.m., he was escorted from his cell to the showers. (ECF No. 1 at 6). While he was in the shower, his cellmate

– Inmate Thomas – had a "mental breakdown" in their cell. Specifically, Inmate Thomas "held the food port hostage by refusing to remove his arm." Inmate Thomas also told Officers Mezzo, Taylor, and Morgan "that the voices were telling [Thomas] to harm his cellmate."

When plaintiff returned to his cell, Inmate Thomas told Officer Mezzo that "I already told [you all] what's up!" At that point, Inmate Thomas "submitted to wrist restraints and allowed [plaintiff] to enter."

After plaintiff's own wrist restraints were removed, Inmate Thomas purportedly told Officer Mezzo that Thomas was not going to give Mezzo "these cuffs." Furthermore, Inmate Thomas allegedly declared to the officers that he was taking plaintiff "hostage."

As this situation unfolded, Officer Taylor advised plaintiff that he had "better handle [his] business," to which plaintiff responded that he "did not have [anything] to do with this situation and that [he] did not want to be pepper sprayed." Officer Morgan then "approached the cell and stated, 'You better kick [Inmate Thomas's] a** or I'm spraying the whole cell.'"

In order to defuse the situation – and not "knowing that [Inmate] Thomas was a homosexual" – plaintiff offered to give Inmate Thomas "oral sex" if Thomas either allowed the correctional officers to "have [Thomas's] wrist restraints or allowed [plaintiff] to submit to wrist restraints." (ECF No. 1 at 6-7). At that point, Inmate Thomas gave up the wrist restraints he had taken. (ECF No. 1 at 7).

According to plaintiff, Officer Taylor, Officer Morgan, and Officer Mezzo "then walked away," leaving him in the cell with Inmate Thomas. Inmate Thomas "expected [plaintiff] to perform oral sex on him," but plaintiff tried to refuse. Plaintiff alleged that Inmate Thomas insisted, telling him that: "It's what Diablo wants."

2

In response, plaintiff "pressed the duress button" to summon help. No one came to "rescue" him, and he and Inmate Thomas began to fight. Plaintiff lost this fight, with the result that he gave Inmate Thomas oral sex. Following this incident, Inmate Thomas requested protective custody status.

The following day, on April 4, 2020, Case Manager Price "was passing legal documents." Plaintiff "informed her what happened and asked her 'how did a mental health level 4 offender get in the cell with [him]?'" According to plaintiff, Case Manager Price responded that she thought plaintiff was "gay like him." She next made a crude remark about plaintiff performing oral sex, then walked away laughing. Plaintiff alleged that Case Manager Price was a "bed broker" and purposefully placed Inmate Thomas in a cell with him. He further noted that he is a mental health level 1 offender.

As a result of this incident, plaintiff stated that he was "physically and sexually assaulted," resulting in severe depression for which he is "forced to take medication." (ECF No. 1 at 8). He further asserted that he was "subjected to [H. pylori] … which will remain with [him] for the rest of [his] life."[1] Plaintiff sought $200,000 from each defendant in compensatory damages, and $200,000 from each defendant in punitive damages. (ECF No. 1 at 9). He also wanted all of the defendants fired.

Along with his complaint, plaintiff filed a motion for leave to proceed in forma pauperis. (ECF No. 3). Before the Court could rule on the motion, however, plaintiff paid the full amount of the filing fee. Nevertheless, because he was a convicted and sentenced state prisoner suing governmental employees, the Court reviewed his complaint under 28 U.S.C. § 1915A. Based on that review, the Court dismissed the official capacity claims against the defendants on November

---

[1] H. pylori refers to a type of bacteria known as "Helicobacter pylori," which can infect a person's stomach. *See Davidson v. Helder*, 2019 WL 6917895, at *2 n.7 (W.D. Ark. 2019).

15, 2021. (ECF No. 8). However, the Court determined that plaintiff's allegations against the defendants in their individual capacities were sufficient for purposes of § 1915A review. (ECF No. 7). Because plaintiff was not proceeding in forma pauperis, the Court advised him that he was responsible for service of process.

On February 28, 2022, plaintiff filed a motion for entry of clerk's default, and a motion for default judgment. (ECF No. 11; ECF No. 12). In the motions, he alleged that defendants had been served on January 17, 2022 and January 18, 2022, but had not responded within twenty-one days, as required. The Court reviewed the motions and denied them on March 3, 2022, because plaintiff had not provided proof of service. (ECF No. 14). In addition, the Court gave plaintiff twenty-one days in which to provide proof of service, advising him that failure to comply would result in the dismissal of this action.

On March 14, 2022, plaintiff filed his proofs of service, which indicated that defendants Taylor and Mezzo had been served on January 17, 2022, defendant Price on January 18, 2022, and defendant Morgan on January 22, 2022. (ECF No. 16; ECF No. 17; ECF No. 18; ECF  No. 19). None of the defendants filed a timely responsive pleading.

On April 26, 2022, defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 26). The following day, defendants submitted a motion for leave to file a response out of time. (ECF No. 28).

## Motion for Leave to File a Response Out of Time

Defendants ask the Court for leave to file a response to plaintiff's complaint out of time, noting that Federal Rule of Civil Procedure 6(b)(1)(B) permits a district court to extend the time for filing "if the party failed to act because of excusable neglect." In support of their motion,

4

defendants state that they failed to file a responsive pleading due to an inadvertent oversight and miscommunication, and that it was not done in bad faith or to cause delay.

## Motion to Dismiss

Defendants argue that plaintiff's case should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for three reasons. First, defendants assert that plaintiff's official capacity claims are barred by the doctrine of sovereign immunity. (ECF No. 26 at 3-5). Second, defendants contend that to the extent they failed to follow Missouri Department of Corrections policy or address plaintiff's grievances, such claims are not cognizable under 42 U.S.C. § 1983. (ECF No. 26 at 5-6). Finally, defendants assert that plaintiff's individual capacity claims are subject to dismissal because there are no allegations regarding their personal involvement. (ECF No. 26 at 6-7).

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may assert as a defense the plaintiff's "failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019).

The Court is not "bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). However, the Court accepts the plaintiff's factual

5

allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Id*. "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element." *Delker v. MasterCard Int'l., Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022).

When evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers. *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014). "[I]f the essence of an allegation is discernible ... then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

## Discussion

As noted above, defendants have submitted both a motion for leave to file a response out of time and a motion to dismiss. For the reasons discussed below, the Court will grant the motion to file a response out of time, deny the motion to dismiss, and direct defendants to file an answer within fourteen days.

**A. Motion for Leave to File Out of Time**

Defendants seek leave to file a response to plaintiff's complaint out of time. As a general matter, the Court "may, for good cause, extend the time" for filing a responsive pleading "on motion made after the time has expired if the party failed to act because of excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B). Excusable neglect encompasses "late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Chorosevic v. MetLife Choices*, 600 F.3d 934, 946 (8th Cir. 2010). All relevant circumstances are

6

considered in making a determination regarding excusable neglect. *Sugarbaker v. SSM Health Care*, 187 F.3d 853, 856 (8th Cir. 1999). Four factors, however, are of particular importance: (1) the possibility of prejudice to the nonmoving party; (2) the length of the moving party's delay, and the potential impact of the delay on judicial proceedings; (3) the reasons for the moving party's delay; and (4) whether the moving party acted in good faith. *Id*.

Based on these factors, the Court will grant defendants' motion for leave to file a responsive pleading out of time. In particular, the Court notes that defendants' late filing appears to be an inadvertent mistake, rather than an intentional act done in bad faith. Further, it does not appear that the delay will prejudice plaintiff in any way.

### B. Motion to Dismiss

Defendants' motion to dismiss is premised on three separate arguments, none of which is persuasive. First, defendants assert that plaintiff's official capacity claims should be dismissed on the basis of sovereign immunity, because those claims are treated as being made against the State of Missouri itself, defendants' employer.  Plaintiff's official capacity claims have already been dismissed, however.  On November 15, 2021, after reviewing the complaint pursuant to 28 U.S.C. § 1915A, the Court issued an order of partial dismissal, dismissing the official capacity claims against defendants without prejudice. (ECF No. 8). Those claims are no longer before the Court and this aspect of defendants' motion to dismiss is moot.

Second, defendants maintain that any failure by them to follow Missouri Department of Corrections policy or address plaintiff's grievances does not state a cognizable 42 U.S.C. § 1983 claim. Upon review of plaintiff's "Statement of Claim," however, it does not appear that plaintiff is accusing defendants of failing to follow policy or not addressing his grievances. Rather, he is

accusing defendants of failing to protect him from a known risk presented by a cellmate with serious mental health issues.

Finally, defendants contend that plaintiff's allegations fail because there are no facts describing defendants' personal involvement, and that there are no allegations showing defendants were personally involved in a constitutional deprivation. The Court disagrees with this statement.

As discussed in the Court's order of November 15, 2021, plaintiff is attempting to bring a failure to protect claim. Under the Eighth Amendment, prison inmates have a clearly established right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). That said, not every injury suffered by one prisoner due to the actions of another prisoner translates into constitutional liability. *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). *See also Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (explaining that because prisons are inherently dangerous environments, not every injury suffered by one prisoner that has been caused by another translates into constitutional liability for the prison officials responsible for the victim's safety). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove deliberate indifference, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). If a plaintiff fails to allege a substantial risk of serious harm, then he has failed to state a claim, and there is no need to consider the issue of the defendant's deliberate indifference. *See Berry v. Sherman*, 365 F.3d 631, 635 (8th Cir. 2004).

The second requirement is a subjective inquiry, and compels the inmate to prove that the prison official had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. That is, a plaintiff must show the defendant acted, or failed to act, with deliberate indifference to the plaintiff's safety. *Id.* at 837 (explaining that a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). Negligence is insufficient to demonstrate deliberate indifference. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998). Instead, for a defendant to have acted with deliberate indifference, "he must have recklessly disregarded a known, excessive risk of serious harm to" a plaintiff's safety. *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

In short, a prison official is deliberately indifferent if he or she "knows of and disregards … a substantial risk to an inmate's health or safety." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016).

In this case, plaintiff has presented facts to the effect that defendant Price purposely placed him in harm's way by assigning him to a cell with an inmate with known serious mental health issues. Regarding defendants Taylor, Morgan, and Mezzo, plaintiff alleges that he personally advised them of the risk he faced, these officers actually witnessed threats made by plaintiff's cellmate, and they deliberately ignored the risk, leaving him to be physically and sexually assaulted. Indeed, plaintiff asserts that his cellmate took him "hostage" in front of defendants Taylor, Morgan, and Mezzo, these officers left him to "handle [his] own business," and then failed to respond when he hit the duress button in his cell.

The Court must accept these factual allegations as true and make all reasonable inferences therefrom in plaintiff's favor. *See Jones v. Douglas Cnty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). Further, as noted above, when evaluating these facts, the Court must hold plaintiff's

9

pro se complaint to less stringent standards than formal pleadings drafted by lawyers. *See Jackson*, 747 F.3d at 541. Liberally construing his allegations, plaintiff has presented sufficient facts to show that each individual defendant knew of the risk posed by plaintiff's cellmate, and deliberately disregarded it.

For the reasons discussed above, the Court will deny defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As such, defendants will be required to file an Answer within fourteen days of the date of this order.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for leave to file a responsive pleading out of time (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants shall file an Answer by **May 13, 2022**.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 29th day of April, 2022.